**Corinthian T. CUFFEE Plaintiff,**

v.

**The DOVER WIPES COMPANY and the Proctor & Gamble Company, Defendants.**

No. Civ. 03–276–SLR.

United States District Court, D. Delaware.

Sept. 7, 2004.

Thomas S. Neuberger, of the Neuberger Firm, P.A., Wilmington, DE and John M. LaRosa, of the Law Office of John M. LaRosa, Wilmington, DE, for plaintiff.

Barry M. Willoughby, and Michael P. Stafford, of Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE, for defendants.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

Plaintiff Corinthian T. Cuffee filed a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC") on December 4, 2001 alleging discrimination by defendants The Dover Wipes Company ("Dover Wipes") and The Proctor & Gamble Company ("P & G") based on retaliation, gender and race discrimination. (D.I. 47 at B440) This initial charge was not formally processed by the EEOC, so plaintiff filed a second charge on February 26, 2002, alleging discrimination by defendants based on race and age. (D.I. 47 at B441) On March 12, 2003, plaintiff filed this action alleging employment discrimination based on age, gender, and race in violation of Title VII, 42 U.S.C. § 1981 and the ADEA, violation of the Equal Pay Act, and retaliation for protected activities in violation of Title VII and 42 U.S.C. § 1981. (D.I. 3 at 11) Plaintiff is seeking reinstatement to the position of Operations Warehouse Manager, an equivalent position, or a position to which he would have progressed but for the alleged discrimination. (D.I. 3 at 17) Plaintiff requests damages including back pay, lost wages, overtime and benefits, future or front pay, loss of earning capacity, payment for personal injuries, punitive damages, attorney's fees and costs, and any other relief deemed just and appropriate. (*Id.*)

On August 6, 2003, this court entered a scheduling order requiring disclosure of all expert testimony before January 30, 2004. (D.I.12) Plaintiff did not disclose one of his four medical experts and his only economics expert until May 14, 2004. (D.I.37) On May 4, 2004, defendants filed a motion to strike plaintiff's experts' testimony. (D.I.35)

The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and 1343(4). Currently before the court is defendants' motion for summary judgment, defendants' motion to strike and plaintiff's motion for leave of court to conduct expert depositions. (D.I.54) For the reasons discussed below, the court shall deny in part and grant in part defendants' motion for summary judgment, grant defendants' motion to strike and deny plaintiff's motion for leave.

## II. BACKGROUND

Plaintiff was employed by defendant beginning in 1981. (D.I. 3 at 3) During his tenure, plaintiff was promoted to the position of "Warehouse Operations Leader." (*Id.* at 4) Plaintiff, an African-American male, alleges that, while he was an operations leader, he was discriminated because he was paid less than other employees performing the same work, denied a raise and demoted in retaliation for his complaints about discrimination.

### A. Equal Pay

When plaintiff was promoted to Warehouse Operations Leader, he replaced an operations manager, Mary Ann Varacalli, a Caucasian female, who was paid approximately $80,000 per annum. (*Id.* at 5) Plaintiff was paid an hourly wage amounting to $38,395 per annum, but he alleges that he performed the same work as Varacalli. (*Id.* at 5) Both plaintiff and Varacalli managed warehouse teams, team leaders, and customer service personnel; both oversaw outside contractors; both evaluated warehouse employees; both signed time cards for warehouse personnel and approved overtime. (D.I. 45 at 5) Both plaintiff and Varacalli took part in disciplining employees, terminating employees and interviewing potential candidates for employment. (*Id.*) Both took part in team leader meetings and attended some management meetings. (*Id.*) Finally, each worked five days a week at the Dover plant, had a daily lunch break, and were "second in command" at the warehouse. (*Id.* at 6, 35)

Defendants claim that Varacalli's duties were divided among four employees when plaintiff replaced her; therefore, plaintiff and Varacalli did not perform the same amount of work. (D.I. 41 at 7) Defendants also claim that plaintiff was not eligible to make the same salary as Varacalli because he did not qualify to be a manager. Plaintiff is a high school graduate whose tenure as defendants' employee has been limited to the Dover facility. (D.I. 46 at B39, B42) Defendants claim that "managers" typically have college degrees and are recruited nationally, whereas "leaders" are warehouse technicians who have worked their way through the system. In addition, those employees who become managers are required to transfer to a new facility upon promotion.[1]

## B. Raise Request and Discrimination Complaint

On November 13, 2001, plaintiff asked his manager, Sharene Taylor, for a raise. (D.I. 42 at A31) Taylor denied the request for a raise. (D.I. 47 at B332) In response to the denial, plaintiff told Taylor that he was going to complain to someone else within the company. (D.I. 46 at B269) Shortly after this meeting plaintiff went on vacation. (D.I. 1 at 6)

## C. Retaliatory Demotion

On December 6, 2001, three days after returning from vacation, plaintiff and Taylor met again. (D.I. 41 at 9) At this time Taylor informed him that she was removing him from the Warehouse Operations Leader position. (*Id.*) Defendants assert this transfer was necessary to achieve Taylor's goals for the warehouse. Specifically, Taylor thought the warehouse needed additional managerial support and believed

moving plaintiff to a role with less responsibility would benefit him professionally because he could "acquire skills necessary for taking on broader responsibilities." (D.I. 41 at 8–9) Defendants also claim that, although the transfer was not disciplinary in nature, plaintiff was not fulfilling his managerial responsibilities at the time. Plaintiff's employee evaluations include both negative and positive ratings. (D.I. 42 at A5–A7)

Also on December 6, 2001, plaintiff filed a formal complaint with defendants' human resources department claiming that he had been removed from his position in retaliation for his complaint to Taylor in November regarding his compensation. (D.I. 42 at A217) On December 19, 2001, plaintiff wrote to P & G Chairman John Pepper about racial discrimination and harassment at the Dover facility. (*Id.*) Defendants' human resources department concluded an investigation on December 18, 2001. (*Id.*)

On January 2, 2002, plaintiff was told to report to his new manager as a Material Resource Technician. (D.I. at B266) Plaintiff was presented with other employment positions, but chose Material Resource Technician, a position that resulted in reduced pay, because he refused to take a lesser role within the warehouse. (D.I. 41 at 10) Plaintiff argues that none of the positions offered him were the equivalent of his Warehouse Operations Leader position.

Plaintiff's position as Warehouse Operations Leader was filled by a younger Caucasian male who received the title of "manager." (*Id.* at 10) Plaintiff's replacement had no prior warehouse experience, had received the title of manager and was paid more than plaintiff. (*Id.* at 11) Plaintiff's

---

1. Plaintiff responds by citing instances of managerial staff who do not meet these prerequisites. (D.I. 45 at 6)

replacement is a college graduate with a degree in engineering. (D.I. 47 at B410)

### D. Medical Leave

On January 7, 2001, after only one day as a Material Resource Technician, plaintiff went on medical leave due to depressive disorders, including suicidal ideation. (D.I. 4 at 10) Plaintiff remained on medical leave, receiving disability, until the termination of his employment. (*Id.*) In October of 2003, plaintiff sent a letter of resignation to defendants, and then later sent a second letter of resignation, which served to terminate his employment. (*Id.*)

### III. MOTION TO STRIKE

■ Federal Rules of Civil Procedure 26(a)(2) and 37(c)(1) provide this court with the authority to strike plaintiff's expert reports because they were not disclosed to defendants by the January 30 scheduling order deadline. The Third Circuit, however, has expressed an aversion to excluding such testimony, unless admission would result in incurable prejudice. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791–92 (3d Cir.1994). In addition to incurable prejudice, the Third Circuit has considered whether or not the non-disclosing party has the ability to cure the prejudice, whether non-disclosure was the result of bad faith, and whether allowing undisclosed testimony would disrupt an orderly and efficient trial schedule. *See ABB Air Preheater, Inc. v. Regenerative Envtl. Equip. Co.*, 167 F.R.D. 668, 672 (D.N.J.1996) (citing *Paoli*, 35 F.3d at 791).

■ It is undisputed that plaintiff failed to produce his expert reports by the scheduling order deadline or before the close of discovery. There is no evidence that plaintiff's failure to meet these deadlines was the result of intentional nondisclosure or bad faith. Instead, it appears that plaintiff's attorneys "dropped the ball" with respect to both expert reports. While plaintiff argues that both expert reports are relevant solely on the issue of damages and not on issues of liability, both reports were included in the plaintiff's brief in response to defendants' motion for summary judgment. (D.I. 46 at B457, B465) Notably, neither were considered by the court in its consideration of the summary judgment motion.

In this case, the plaintiff's expert reports are too untimely to be included. Trial is scheduled for October 12, 2004. At this point, it would prejudice the defendants to include the reports because it would leave them little over a month to contact experts and get reports to counter the conclusions drawn by plaintiff's experts. Therefore, defendants' motion to strike is granted.[2]

### IV. MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

■ A party is entitled to summary judgment only when the court concludes "that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no material issue of fact is in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue

---

**2.** In conjunction with his response to defendants' motion to strike, plaintiff filed a motion for leave to allow defendants time to depose the two experts. Because the expert reports are excluded, the motion is denied.

for trial.'" *Id.* at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). "Facts that could alter the outcome are 'material', and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assur. Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of some evidence in support of the party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This court, however, must "view all the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995); *Pacitti v. Macy's*, 193 F.3d 766, 772 (3d Cir.1999). With respect to summary judgment in discrimination cases, the court's role is "'to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff.'" *Revis v. Slocomb Indus.*, 814 F.Supp. 1209, 1215 (D.Del. 1993) (quoting *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987)).

**B. Exhaustion of Administrative Remedies**

■ A precondition to Title VII suits is that the plaintiff file a discrimination charge with the EEOC and that the EEOC subsequently issue a Right to Sue Letter. 42 U.S.C. §§ 2000e–5(e), 2000(e)–5(f). Because of this requirement, plaintiff can only bring those claims that were asserted in an EEOC charge or arise out of the EEOC's investigation of discrimination. *See Waiters v. J.L.G. Parsons*, 729 F.2d 233, 237 (3d Cir.1984); *Hicks v. ABT Assocs.*, 572 F.2d 960, 966 (3d Cir.1978).

In this case, plaintiff filed two charges with the EEOC, one on December 5, 2001, and the other on February 26, 2002. The latter charge was the only one that resulted in the issuance of a Right to Sue Letter. For this reason, the charge filed on February 26, 2002 and the subsequent EEOC investigation must be the basis for plaintiff's suit in federal court. Defendants claim that the February 26 charge did not include allegations of gender discrimination and retaliation; therefore, the plaintiff cannot bring these two claims in federal court. The February charges, along with the EEOC's investigation of those charges, are analyzed below to determine whether plaintiff has exhausted his administrative remedies with respect to his claims of gender discrimination and retaliation.

**1. Gender Discrimination Claim**

■ Plaintiff alleges that he was discriminated against based on his gender because he was paid less than his female predecessor, and because he was retaliated against by a female manager to such an extent that it led to his constructive discharge. (D.I. 3 at 11) Plaintiff's charge of discrimination filed with the EEOC, however, only depicts circumstances of race and age discrimination, as well as a general discussion of his demotion. (D.I. 42 at A47) Nowhere in the "particulars" narrated on the charge does plaintiff allege that the motivation for the discrimination was

his gender. (*Id.*) In fact, other than indicating parenthetically the gender of each person mentioned in the charge, plaintiff does not mention gender at all. (*Id.*)

In addition, plaintiff's charge does not allege facts that would give rise to an inference of gender discrimination. In the narrative plaintiff mentions both male and female managers who were responsible for the decision to transfer him to a technician position. (*Id.*) Plaintiff mentions that his predecessor was a female and was paid more, but does not indicate that he believes he was paid less because he was a male. (*Id.*) In fact he states, "I believe that I have been discriminated against on the basis of race and age because ... the person who I replaced ..., Maryann Varacalli (w/f)," was paid more. (*Id.*) Plaintiff also follows this statement with the assertion that his replacement was a white male who was paid more, which would contradict an inference by the EEOC of gender discrimination. (*Id.*) Together these assertions would not give rise to an inference that plaintiff was discriminated against based on his gender.

As part of the EEOC investigation of plaintiff's charge, plaintiff filled out a "Charge Information Questionnaire" in which he listed the types of harm or discrimination he experienced. (*Id.* at A50) Although many potential bases for a discrimination claim are listed, gender is specifically not listed. (*Id.*)

Therefore, there is no evidence that plaintiff claimed gender discrimination in his EEOC charge, nor that the EEOC would have investigated a gender discrimination claim. As such, defendants' motion for summary judgment is granted with

regards to plaintiff's gender discrimination claim.

### 2. Retaliation Claim

Plaintiff claims that he was retaliated against because he complained about discriminatory practices at the Dover facility. In plaintiff's EEOC charge he did not specifically mention retaliatory actions on the part of defendants, although he did generally discuss his transfer to Material Resource Technician. (*Id.* at A47) Plaintiff did explicitly include retaliation in his "Charge Information Questionnaire," which indicates that the retaliation claim should have been a part of the EEOC investigation. (*Id.* at A50) Notably, the EEOC had the questionnaire before the conclusion of its investigation and the issuance of the Right to Sue Letter on December 12, 2002. (D.I. 47 at B479) The defendants were able to respond to a retaliation charge because they provided the EEOC with "exhibits [to] demonstrate the legitimate, non-discriminatory reasons" that plaintiff was removed from his operations leader position. (D.I. 42 at D1022) Not only is there evidence that plaintiff's retaliation charge may have been part of the EEOC investigation, but there is also evidence that defendants had notice that plaintiff's transfer to a new position would likely be an issue in a pending suit. Therefore, it would be inappropriate for this court to dismiss plaintiff's retaliation claim on summary judgment for failure to exhaust administrative remedies.

### C. Retaliation Claim

A plaintiff claiming retaliation must first establish a prima facie case for retaliation under Title VII.[3] In order to do

---

**3.** The anti-retaliation section of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against

any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he

so, a plaintiff must demonstrate by a preponderance of the evidence that: (1) he engaged in protected activity;[4] (2) the defendant took adverse employment action against him; and (3) a causal link exists between the protected activity and the adverse action. *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir.1997). Once a plaintiff has established a prima facie case, the burden shifts to the defendant to clearly set forth, through the introduction of admissible evidence, reasons for its actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the motivating force behind the adverse employment action. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant successfully rebuts the plaintiff's prima facie showing, the presumption of discrimination drops from the case, and plaintiff must present sufficient evidence for a reasonable factfinder to conclude "that the proffered reason was not the true reason for the employment decision." *Id.* at 256, 101 S.Ct. 1089; *see also Bray v. Marriott Hotels*, 110 F.3d 986, 990 (3d Cir.1997) ("The plaintiff must produce evidence from which a reasonable factfinder could conclude either that the defendants' proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination."). Plaintiff has failed to establish a prima facie case of retaliation so defendants' motion for summary judgment is granted as to this claim.

## 1. Complaint to Manager in November

▮▮▮ In this case, plaintiff failed to establish his prima facie case because he has not asserted proof of a protected activity. Protected activities include charges of discrimination or complaints about discriminatory employment practices. *See Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 287–88 (3d Cir.2001). Plaintiff has alleged that he was demoted in retaliation for complaining to his manager about discriminatory practices, but has not asserted evidence that he actually complained about discrimination. Instead the record shows that he complained about being denied a raise. (D.I. 47 at B435, D.I. 46 at B188) Specifically, plaintiff's notes about the November meeting with his manager state that he complained to his manager because he did not feel it was "fair" that he was denied a raise. (D.I. 47 at B435) Absent any express complaint about discriminatory activity by defendants, plaintiff's statement to his manager in November cannot be considered a protected activity.

## 2. EEOC Charges

▮▮ Assuming plaintiff's charges filed with the EEOC would be considered protected activities under Title VII, plaintiff has not established a prima facie case for retaliation resulting from his EEOC complaints because he did not show a causal connection between any adverse employment action by defendants and this protected activity. Plaintiff's first charge, filed in December of 2001, cannot be caus-

had made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
42 U.S.C. § 2000e–3a.

**4.** Title VII defines a "protected activity" as an instance when an employee has

opposed any practice made an unlawful employment practice by this subchapter, or ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
42 U.S.C. § 2000e–3(a).

ally linked to an adverse employment action because there is no evidence that the defendants knew about the complaint. It was never formally investigated by the EEOC and a Right to Sue Letter was never issued. Although the second charge, filed in February 2002, was formally investigated and resulted in a Right to Sue Letter, it cannot be causally linked to an adverse employment action because it was filed with the EEOC after plaintiff had been transferred and after he began medical leave.

### 3. Letter to P & G Chairman John Pepper

■ In the same regard, plaintiff has failed to establish a prima facie case of retaliation with respect to his complaints of discrimination made to the Chairman of P & G. In December 2001, plaintiff called and wrote a letter to the Chairman regarding discrimination at the Dover facility. (D.I. 47 at B434, D.I. 45 at 8) Assuming his communications with the Chairman were protected activities, these complaints were made after plaintiff had already met with his manager and found out he was being transferred out of the operations leader position. Plaintiff had already been "demoted" when he made these complaints; therefore, the complaints cannot be the basis for the claim that his transfer was in retaliation for complaints about discrimination.

### D. Equal Pay Act Claim

■ The Equal Pay Act ("EPA") prohibits employers from discriminating between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill,

effort, and responsibility, and which are performed under similar working conditions except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex [.]

29 U.S.C. § 206(d)(1). The Third Circuit has articulated that the controlling consideration in EPA cases is whether or not the jobs being compared have a "common core" of tasks that make the jobs equal. *See Brobst v. Columbus Services Int'l,* 761 F.2d 148, 156 (3d Cir.1985). The mere fact that a party is performing work formerly done by another is alone insufficient to support a finding of equality because the act requires that jobs be "equal," not just "comparable." *See Angelo v. Bacharach Instrument Co.,* 555 F.2d 1164, 1173 (3d Cir.1977). Inconsequential differences in job requirements, however, cannot be used to justify paying a lower wage to an employee of one gender. *Brobst,* 761 F.2d at 155–56 (*citing Usery v. Allegheny County Inst. Dist.,* 544 F.2d 148, 152 (3d Cir. 1976)). Therefore, the jobs being compared must be substantially similar, but carry different wages to violate the EPA. *See Angelo,* 555 F.2d at 1173.

■ Unfortunately, the court was not provided with a job description for the Warehouse Operations Leader or Ms. Varacalli's managerial position. The court must rely on plaintiff's statements regarding what work he performed and defendants' assertion that Varacalli's job was divided up among four different employees. Taking these claims in the light most favorable to the plaintiff, a reasonable jury could choose to believe the plaintiff's statements that his job was substantially similar to Ms. Varacalli's job; therefore, this court cannot conclude on summary judg-

ment that the plaintiff and Ms. Varacalli did not perform the same work and have the same responsibilities.

Even if plaintiff and Ms. Varacalli performed substantially the same work, defendants would not be in violation of the EPA if the difference in pay was the result of a seniority system, merit system, system measuring earnings by quantity or quality of production or were based on any other factor other than sex. See 29 U.S.C. § 206(d)(1). To this end, defendants claim that the pay difference can be attributed to the fact that plaintiff was a "technician" and Varacalli was a "manager." The focus of an EPA analysis, however, is the work performed not the title of the employee. The titles of "technician" and "manager" would only be relevant if, as a technician, the plaintiff performed different work than a manager. In-and-of-itself defendants' title system does not explain the difference in pay given to plaintiff and Varacalli. Defendants have provided testimonial evidence that managers and technicians perform different amounts of work. Plaintiff has provided testimonial evidence that he performed the same work as Varacalli, despite defendants' title system. Plaintiff has also shown that one manager at the Dover facility had the title "leader" and not "manager." (D.I. 47 at B389, 396) If a jury chose to believe plaintiff's testimony over defendants', and/or infer that defendants' title system is just a pretextual justification, it could reasonably find that defendants violated the EPA. Therefore, this issue cannot be disposed of on summary judgment.

### E. Racial Discrimination Claim

Claims brought pursuant to Title VII are analyzed under a burden-shifting framework. Under this framework, plaintiff must first establish a prima facie case of race discrimination under Title VII.

In order to state a case based on discrimination, plaintiff must prove that: (1) he is a member of a protected class; (2) he suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly-situated person not of the protected class is treated differently. See Boykins v. Lucent Techs., Inc., 78 F.Supp.2d 402, 409 (E.D.Pa.2000) (citing Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir.1999)). The Third Circuit recognizes, however, that the elements of a prima facie case may vary depending on the facts and context of the particular situation. See Pivirotto v. Innovative Sys. Inc., 191 F.3d 344, 352 (3d Cir.1999).

If plaintiff makes a prima facie showing of discrimination, the burden shifts to defendants to establish a legitimate, nondiscriminatory reason for their actions. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If defendants carry this burden, the presumption of discrimination drops from the case, and plaintiff must "cast sufficient doubt" upon defendants' proffered reasons to permit a reasonable factfinder to conclude that the reasons are fabricated. See Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir.1996) (en banc).

#### 1. Member of a Protected Class

It is undisputed that plaintiff is a member of a protected class, as he is African–American.

#### 2. Adverse Employment Action

Plaintiff alleges that he was constructively discharged, demoted and received unequal pay as a result of defendants' racial discrimination. Plaintiff cannot meet the standards for asserting a con-

structive discharge; therefore, this court grants the defendants' motion for summary judgment with respect to this claim, but denies it with respect to his claims of unequal pay and discriminatory demotion.

### a. Constructive Discharge

■ Plaintiff argues that he was constructively discharged because he was discriminated against to such an extent that he was forced into medical leave and eventually forced to resign. The Third Circuit has established an **objective** standard for a finding of a constructive discharge, which requires that the employment conditions be so abhorrent that a reasonable person would have felt "compelled" to terminate the employment. *See Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir.2001). Along these lines, the Third Circuit has also held that a "stressful and frustrating" work situation was insufficiently abhorrent to constitute constructive discharge. *Id.* at 169.

■ In this case, it is clear that plaintiff was involuntarily transferred to a different position. Defendants admit that they intended to move plaintiff to a "reduced role" within the warehouse where plaintiff would have fewer responsibilities. (D.I. 41 at 9) Plaintiff was offered his choice of four positions and chose his final position as a mechanical technician. It is also uncontested that plaintiff was refused a raise.

While these circumstances can be characterized as creating a frustrating and stressful work environment for plaintiff, he has failed to establish that they created conditions that were so abhorrent that a reasonable person would have resigned after just one day in the new position. The fact that plaintiff suffered from severe emotional distress is evidence of the subjective effects of the work environment, not objective evidence sufficient to meet the Third Circuit's constructive discharge standard.

In addition, plaintiff alleges that he was placed under a "hostile and sarcastic supervisor" in his new position. (D.I. 45 at 32) The Third Circuit has articulated that "reasonable employee[s]" explore alternatives before concluding that the only option to rectify a situation is to resign. *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir.1993). Plaintiff was only supervised as a mechanical technician for one day. This is not long enough for a reasonable employee to conclude that his only recourse to his working conditions is to resign. Therefore, this situation does not amount to a constructive discharge.

### b. Transfer to Mechanical Technician Position

■ It is undisputed that defendants moved plaintiff to a different position to assign him a "reduced role" within the warehouse. (D.I. 41 at 9) Reducing plaintiff's role at work amounts to an adverse employment action.

### c. Unequal Pay

■ It is also undisputed that plaintiff was paid less than Maryann Varacalli and his replacement. Lesser pay can also be considered an adverse employment action.

### 3. Inference Unlawful Discrimination

■ As part of the burden shifting analysis, the plaintiff must assert circumstances surrounding the adverse employment actions giving rise to an inference of discrimination. *See Kidd v. MBNA Am. Bank*, 93 Fed.Appx. 399, 400 (3d Cir.2004). Once the plaintiff has carried this burden, the defendants can rebut the claims with evidence that there was a legitimate rea-

son for the employment action, in which case, plaintiff must put forth evidence that at least casts sufficient doubt upon each of defendants' reasons. *Id.*

### a. Transfer to Mechanical Technician

 Plaintiff argues that he was demoted based on his race as evidenced by the fact that he was replaced by a Caucasian male. (D.I. 45 at 23) Defendants rebut this claim by asserting that plaintiff and his manager had disagreements, that plaintiff had failed to fulfill his responsibilities as a supervisor and that plaintiff's reassignment to another position was merely part of a larger warehouse reorganization. (D.I. 41 at 21–22) Defendants offer as evidence of the disagreements plaintiff's own testimony. (D.I. at A129–132) Defendants claim that plaintiff had been previously reprimanded about his failure to fulfill his duties as evidenced by his personal handwritten notes and his employee evaluations. (D.I. 41 at 25) Defendants use deposition testimony of plaintiff's manager as evidence of their intent to increase management representation at the warehouse. (D.I. 41 at 25)

Plaintiff successfully casts doubt upon these justifications. Plaintiff claims the disagreements with his manager are evidence of his manager's antagonism and discrimination, not of his inability to perform his job. Many of plaintiff's evaluations have as many positive ratings as negative ones and no formal disciplinary process was ever taken against plaintiff. (D.I. 41 at A5–A17, D.I. 42 at A301) In addition, there is no evidence that anyone else was reassigned as part of the warehouse reorganization to increase manager representation. Making all inferences in the light most favorable to the plaintiff, a jury could conclude that plaintiff was not legitimately transferred from his position but was transferred due to discrimination by defendants.

### b. Unequal Pay

 Plaintiff claims that he was discriminated against based on his race because defendants paid his predecessor, a Caucasian female, and his replacement, a Caucasian male, more money. Defendants claim that plaintiff was not eligible to make as much as his predecessor and his replacement because he did not perform the same work as either and both of them were "managers." As discussed above, the parties do not provide documentation of the job descriptions at issue but instead rely only on testimonial evidence. Therefore, without weighing the respective testimony on each side, this court cannot conclude that there is no genuine issue of material fact with regard to the basis for plaintiff's unequal pay.

### F. Age Discrimination Claim

 The Age Discrimination Act ("ADEA") prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). Because plaintiff has not provided evidence of direct age discrimination, this court analyzes his claim under the familiar burden shifting approach. *See Fakete v. Aetna, Inc.,* 308 F.3d 335 (3d Cir.2002). As with other employment discrimination claims, the burden shifting analysis under the ADEA requires that plaintiff first establish a prima facie case of discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Plaintiff can establish a prima facie case by showing that: (1) he is at least 40 years of age and thus a member of the protected class; (2) he was qualified for

the position from which he was discharged; (3) he was dismissed despite being qualified; and (4) he was replaced by a sufficiently younger person to create an inference of age discrimination. *See Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 53 (3d Cir.1990). Once plaintiff has established a prima facie case, the burden shifts to defendants to produce evidence of a legitimate nondiscriminatory reason for the adverse decision. *See McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S.Ct. 1817. If defendants carry this burden, the presumption of discrimination drops from the case, and plaintiff must "cast sufficient doubt" upon defendants' proffered reasons to permit a reasonable fact finder to conclude that the reasons are fabricated. *See Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d at 1072.

■ Plaintiff alleges that he was discriminated against based on his age, 46, because he was transferred out of his position as Warehouse Operations Leader and the position was filled by a 30 year old male. (D.I. 3 at 13) It is undisputed that plaintiff meets the ADEA age requirement, that he was replaced by someone young enough to warrant the inference of age discrimination, and that he was transferred to a different position. At issue is whether plaintiff was qualified and transferred despite his qualifications.

In this case, plaintiff has met his initial burden of establishing a prima facie case. Plaintiff is able to provide positive performance evaluations, which included statements regarding his dedication to performing his job well. From these it could be inferred that plaintiff was qualified for his position. (D.I. 42 at A5–A17) Defendants claim plaintiff was paid less because he did not have a college degree and his replacement had one in engineering. Plaintiff responds by arguing that his replacement did not have as much manageri-

al experience or warehouse experience as he did and, therefore, was less qualified for the position.

■ Plaintiff has cast sufficient doubt on defendants' argument that plaintiff's replacement was legitimately paid more because he had a college degree. Defendants did not provide any job description or evidence, other than testimonial affidavits, that a college degree was required to perform plaintiff's job, nor did they provide evidence that experience in engineering would be necessary to fulfill plaintiff's responsibilities. A reasonable jury could conclude that plaintiff's managerial and warehouse experience was just as valuable as an engineering degree in light of plaintiff's responsibilities at the warehouse.

## V. CONCLUSION

For the reasons stated, defendants' motion for summary judgment (D.I.40) is granted with respect to plaintiff's Title VII claim based on gender discrimination, Title VII and § 1981 retaliation claims, and constructive termination claims. Defendants' motion for summary judgment is denied as to plaintiff's EPA claim, the ADEA claim and Title VII and § 1981 claims based on racial discrimination. Defendants' motion to strike is granted. Plaintiff's motion for leave to depose experts is denied. An order consistent with this memorandum opinion shall issue.