

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-7-2001

# Duffy v. Paper Magic Grp Inc

Precedential or Non-Precedential:

Docket 00-2818

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Duffy v. Paper Magic Grp Inc" (2001). *2001 Decisions.* Paper 205.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/205

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 7, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2818

BERNADINE DUFFY

          Appellant,

v.

PAPER MAGIC GROUP, INC.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 98-cv-01518)
District Judge: The Honorable A. Richard Caputo

Argued: June 28, 2001

BEFORE: BECKER, Chief Judge, and NYGAARD,
and REAVLEY* Circuit Judges.

(Filed: September 7, 2001)

          Peter G. Loftus, Esq. (Argued)
          Loftus Law Firm
          Main Street
          P.O. Box V
          Waverly, PA 18471

           Attorney for Appellant
Bernadine Duffy

_____
* Honorable Thomas M. Reavley, Circuit Judge for the United States
Court of Appeals for the Fifth Circuit, sitting by designation.

Daniel T. Brier, Esq.
Donna A. Walsh, Esq. (Argued)
Myers, Brier & Kelly
425 Spruce Street
Suite 200
Scranton, PA 18503

Attorney for Appellee
Paper Magic Group, Inc.

OPINION OF THE COURT

NYGAARD, Circuit Judge:

Bernadine Duffy brought an Age Discrimination in Employment Act claim, 29 U.S.C. S 621 et seq., against her former employer, Paper Magic, Inc. Duffy argues that she was constructively discharged as a result of a continuing pattern of discrimination by Paper Magic. She appeals from the District Court's summary judgment in favor of the defendant. We will affirm.

I.

Duffy began working for Paper Magic in 1986 as a Customer Service Representative. She was promoted to Senior Customer Service Representative in January 1987, and to Assistant Customer Service Manager in July 1989. As Assistant Customer Service Manager, her responsibilities included overseeing the order processing division.

Duffy alleges that in August 1993, she was "passed over" for a promotion to Manager of the Order Processing Customer Service Department, for someone younger than she. A short time thereafter, however, Paper Magic promoted Duffy to Supervisor of Order Processing in the Order Processing/Customer Service Department. She contends that following this promotion, Paper Magic changed her title back to Assistant Customer Service Representative, even though her duties remained the same.

2

In September 1994, Paper Magic transferred Deborah Pica into the Order Processing/Customer Service Department as Supervisor of Customer Service. Pica was approximately thirty years old at the time. Duffy alleges that after Pica arrived, one of her supervisors refused to cooperate with her, continually harassed her, and refuted any of her suggestions to improve or correct matters in the department. In contrast, her supervisor "bent over backwards" to make Pica's life easier.

In December of 1995, Duffy's title was changed to Supervisor of Order Processing. At this time, one of her supervisors explained that she and Pica were getting 3% raises to take on the added responsibility of new acquisitions. Duffy contends, however, that her co-workers informed her that Pica really got a 25% raise. She states that, the company, to justify this differential, made Pica the new Customer Service/Order Processing Manager. Duffy contends that she expressed interest in this position but her supervisor discouraged her because of her age, and of the long hours the position would ostensibly require.

In addition, Duffy alleges that she was prevented from participating in the hiring process for the Order Processing Department, despite her supervisory position. She claims that Pica handled all interviews, and rebuffed her input. She further contends that, unlike the Customer Service side of the department, Order Processing had to wait months before getting approval to hire new staff. As a result, Duffy worked overtime hours, but unlike other salaried employees, did not receive overtime pay.

Duffy alleges other inequities. She was one of two supervisors excluded from a company meeting during May of 1996. She was also excluded from a training seminar for supervisors. She further maintains that she was the only supervisor in the company who was given a weekly"report card" on her job performance by the School Marketing Department. She was also removed from all committees, including the computer committee and the total quality management committee. Additionally, she contends that she was reprimanded by the Human Relations Director for failing to participate in company events. According to Duffy, her nonparticipation resulted in a lack of cooperation from

3

others for work-related projects. She states that she complained about such conduct but nothing changed. As a result of these working conditions, Duffy's health deteriorated, requiring that she consult with a physician.

Finally, Duffy maintains that her superiors made derogatory remarks about her age. Specifically, she alleges that her supervisor told her that "she was getting older and wasn't remembering things as she got older." Another supervisor reminded her that she was getting older and advised her to look for another job requiring fewer hours.

Generally, Duffy was rated as an average to above average individual worker. However, her annual performance evaluations consistently reflected weakness in the areas of supervisory, managerial, and organizational skills. For example, in 1996, she was rated "high average" for her work but "low average, at best" for her supervisory skills. However, Duffy's salary was not reduced as a result of her evaluation nor were her responsibilities modified. She received an increase in salary for each year between 1986 and 1996 and her salary doubled in the ten years that she was employed by Paper Magic.

On July 24, 1996, Duffy resigned from her position at Paper Magic. On February 3, 1997, she filed an administrative charge of discrimination with the Equal Employment Opportunity Commission. She also filed an administrative complaint with the Pennsylvania Human Relations Commission on February 19, 1997. On May 7, 1997, the PHRC formally dismissed Duffy's charge of discrimination as untimely, and for lacking any basis for equitable tolling of the time limitations.

Later, Duffy filed this action against Paper Magic, alleging claims under the Age Discrimination in Employment Act, 29 U.S.C. S 621 et seq., the Americans with Disabilities Act, 42 U.S.C. S 12101 et seq., the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. S 2101 et seq., the Pennsylvania Human Relations Act, 43 P.S. S 951 et seq., and Pennsylvania common law.

Paper Magic filed a 12(b)(6) motion to dismiss each count of Duffy's complaint. Duffy voluntarily withdrew her PHRA and wrongful discharge claims. The District Court then

partially granted Paper Magic's motion, and dismissed Duffy's ADA and WARN claims. The District Court concluded that Duffy failed to state a claim under the ADA since merely being overweight is not a disabling impairment under the ADA. The court dismissed Duffy's WARN claim because she failed to allege a "plant closing" or "mass layoff " triggering the statute's notice obligation.

Discovery closed and Paper Magic moved for summary judgment on Duffy's ADEA claim, her only remaining claim. The District Court concluded that Duffy failed to demonstrate that she was constructively discharged or otherwise suffered an adverse employment action within the purview of the ADEA and entered summary judgment in favor of Paper Magic.

Duffy filed a notice of appeal, challenging only the entry of summary judgment in favor of Paper Magic on her claim of age discrimination. We exercise plenary review the District Court's decision to grant summary judgment. See Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).

II.

The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, term, conditions, or privileges of employment on the basis of their age. See 29 U.S.C. S 623(a)(1). Age discrimination may be established by direct or indirect evidence. See Connors v. Chrysler Fin. Corp., 160 F.3d 971, 972 (3d Cir. 1998). When evaluating ADEA discrimination claims based on indirect evidence, a plaintiff may establish a prima facie case of age discrimination under the ADEA by demonstrating that she: (1) was a member of a protected class, i.e., that she was over forty, (2) is qualified for the position, (3) suffered an adverse employment decision, (4) and was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination. See id. at 973.1 To survive a motion for summary judgment, the

_____

1. A prima facie case creates an inference of unlawful discrimination. The burden of production then shifts to the employer who can dispel the

5

evidence must be " `sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case.' " Id. (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc)). Here, the District Court found that Duffy had failed to show a prima facie case because she did not produce evidence sufficient to convince a reasonable fact finder that she had established any adverse employment action. We agree.

Duffy asserts that she established a prima facie case because she was constructively discharged, and thus suffered an adverse employment action. We employ an objective test to determine whether an employee can recover on a claim of constructive discharge. See id. at 974. Specifically, a court must determine "whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." Id. (citations omitted).

Duffy claims that she was constructively discharged because she experienced a "continuous pattern of discriminatory treatment" at Paper Magic. As noted earlier, she contends that: 1) she was not considered for a promotion to Manager of the Customer Service/Order Processing Department because of her age; 2) her department was consistently understaffed and management delayed in providing needed assistance; 3) her supervisors made negative remarks about her age; 4) she was excluded from a training seminar for managers; 5) she was removed from work-related committees, such as the computer committee and the total quality management control committee; 6) she was prevented from participating in the hiring for the Order Processing Department, even though she was the Supervisor; 7) other employees and

_____

inference by articulating a legitimate, nondiscriminatory reason for its actions. See Connors, 160 F.3d at 974 n.2. If the employer meets this burden, the employee must then prove by a preponderance of the evidence that the articulated reasons are a pretext for discrimination. See id. Where the employee is unable to establish a prima facie case, however, no inference of discrimination is raised and the employer has no burden to proffer a reason for any action. Spangle v. Valley Forge Sewer Auth., 839 F.2d 171, 174 (3d Cir. 1988).

6

departments failed to cooperate with her; 8) she was the only supervisor in the company who was given a weekly "report card" by the School Marketing Department; 9) Human Resources reprimanded her for failing to participate in company events; and 10) other salaried employees were paid for overtime work, while she was not.

The District Court held that, although the above allegations indicated that Duffy experienced stress and discomfort on the job, she did not provide sufficient evidence that she was constructively discharged or otherwise suffered an adverse employment action. The Court reasoned that Duffy's testimony focused almost entirely on her subjective view that Paper Magic constructively discharged her. Moreover, the Court noted that Duffy established none of the situations that we identified in Clowes v. Allegheny Valley Hospital, 991 F.2d 1159, 1161 (3d Cir. 1993), as suggesting constructive discharge. Specifically, Paper Magic never threatened to fire Duffy, encouraged her to resign from her position, or involuntarily transferred her to a less desirable position. Moreover, she received satisfactory job evaluations throughout her employment. And finally, there was no evidence that Duffy utilized an internal grievance procedure or requested a transfer within the company.

The District Court correctly recognized that Duffy had failed to demonstrate any of the factors listed in Clowes. However, it is important to note that we have never made the Clowes factors an absolute requirement for recovery. See id. (noting that the plaintiff "cannot rely on many of the factors commonly cited by employees who claim to have been constructively discharged") (emphasis added). The absence of the factors in Clowes is not necessarily dispositive. Nonetheless, we agree with the District Court that Duffy was not constructively discharged.

We have held that constructive discharge may occur "when the employer is aware that the employee has been subjected to a continuous pattern of harassment and the employer does nothing to stop it." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1084–85 (3d Cir. 1996). In Aman, the plaintiff was continuously subjected to racially-based insults and false accusations of favoritism,

7

wrongdoing, and incompetence; she was repeatedly admonished not to touch or steal anything; she was forced to do menial tasks not assigned to white employees; her co-workers withheld information and stole documents that she needed to perform her job; and her employer threatened to "get rid of her." 85 F.3d at 1077-80. When the employee retained an attorney and submitted a formal complaint of discrimination, she was subjected to additional false accusations of incompetence and the abusive conduct of her co-workers intensified. See id. at 1085. On these facts, we held that the employer was not entitled to summary judgment on a claim of constructive discharge. See id.

Later, in Levandos v. Stern Entertainment, 860 F.2d 1227 (3d Cir. 1988), we held that several incidents of discriminatory conduct were legally sufficient to raise the issue of constructive discharge.2 Specifically, the plaintiff-employee filed an affidavit stating, inter alia , that: she was the only woman in a management position; she was excluded from management meetings; the general manager of the restaurant boasted that the plaintiff `would not be there long'; management told other employees that the plaintiff did not fit the mold of a maitre d'hotel because she was a woman; the owner asked an employee to find a man to replace the plaintiff; management falsely accused her of stealing, drinking, and fraternizing with employees; and on one evening, she discovered wine bottles in her locker to make it appear as if she were stealing. See id. at 1228. Additionally, a co-worker submitted an affidavit praising the plaintiff 's work and reputation and stating that management disliked women. In a complaint filed with the EEOC, the plaintiff alleged that she was not permitted to order supplies although a male manager was able to do so, and that she was replaced by a male friend of the chef. The plaintiff resigned, stating that her decision was precipitated by the accusations of stealing.

_____

2. We also emphasized that a single, non-trivial incident of discrimination may be egregious enough to compel a reasonable person to resign. See Levandos, 860 F.2d at 1232. In such a case, "an employment discrimination plaintiff may simply face a more difficult burden of proof in establishing the employer's liability . . . ." Id.

We reversed the District Court and held that the record "contain[ed] more than a scrap of evidentiary material, . . . from which a fact-finder could infer that conditions at the restaurant were so intolerable that a maitre'd of reasonable sensitivity would be forced to resign," and that the plaintiff 's affidavit alone was sufficient to defeat summary judgment. Id. at 1231 & n.7.

Although the present case is similar to Aman and Levendos in that it concerns a pattern of conduct rather than an isolated incident, the situation does not reach the threshold of "intolerable conditions." Although certainly stressful and frustrating, the alleged conduct would not compel a reasonable person to resign. For example, in contrast to the changing duties of the plaintiffs in Aman, Duffy's tasks remained the same while she was the Supervisor of Order Processing. She was never assigned degrading or menial tasks and she consistently received pay increases during her employment. Duffy does allege that her department was understaffed and that management deliberately delayed providing needed assistance, thereby making her job more difficult. Duffy's job, however, did not become impossible as a result of these staff shortages. Rather, the shortages simply required her to work longer hours until help arrived. This made her job more stressful, but not unbearable. See Connors , 160 F.3d at 975 ("[E]mployees are not guaranteed stress-free environments and [ ] discrimination laws`cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting."). And, as Duffy admits, Paper Magic did eventually provide assistance to her department.

Like the staff shortages, Duffy's exclusion from committees, hiring decisions, a single staff meeting, and a single supervisor seminar would not render a job so unbearable that she was forced to resign. Although they may have disappointed and somewhat upset her, such exclusions did not affect Duffy's ability to do her job as Supervisor of Office Processing. As such, although Duffy may have subjectively believed that these circumstances were too onerous to bear, no reasonable trier of fact could conclude that exclusion from committee membership or

9

lack of hiring authority renders working conditions objectively intolerable. See Gray, 957 F.2d at 1083 ("The law does not permit an employee's subjective perceptions to govern a claim of constructive discharge.").

Moreover, Duffy's weekly "report card" and lack of overtime pay do not warrant resignation. Although the "report card" constituted close supervision, Duffy does not allege that it placed greater requirements on her than others or imposed unreasonably exacting standards of her job performance. It merely provided her with feedback and information. Thus, it does not amount to overzealous supervision that supports an inference of intolerable working conditions. With respect to the lack of overtime pay, it is undisputed that Duffy was an exempt supervisory employee who was not entitled to overtime pay under federal law. See 29 U.S.C. S 213(a)(1).

Duffy's attempt to use her physician's opinion that her job had an adverse affect upon her health to prove that her working conditions were intolerable also fails. These health problems support an inference that Duffy's environment was stressful. However, as noted above, a stressful environment does not amount to constructive discharge.

Duffy's contentions that her supervisors, because of her age, made disparaging remarks and failed to give her a promotion provide some support for her claim. With respect to the alleged remarks about age, she contends that one of her supervisors told her that "she was getting older and wasn't remembering things as she got older." She also contends that another supervisor reminded her that she was getting older and suggested that she look for another job with fewer hours. She alleges that these comments were made several times over the course of her employment with Paper Magic.3 Although these comments were inappropriate, they were not sufficiently derogatory or offensive to compel a reasonable person to resign. Additionally, they did not happen on a constant or even frequent basis. Thus, they did not create intolerable working conditions.

_____

3. Duffy also alleges demeaning remarks about her weight but they are not relevant to her age discrimination claim.

10

Regarding her "missed" promotion, Duffy's deposition asserts that her supervisor told her that Pica was better suited for the position because she was younger and therefore could manage the longer hours. She reports that her supervisor told her that "she was getting older now" and that she "should just do her regular job." We recognize that being "passed over" for a promotion based on age rather than merit would be highly frustrating and upsetting to a reasonable employee. However, because Duffy has not produced evidence that she was qualified for the position of Customer Service/Order Processing Department Manager, her missed promotion cannot support her constructive discharge claim. See Spangle, 839 F.2d at 173-74 (dismissing constructive discharge claim where employee's prima facie case was insufficient because he was not qualified for supervisory position). Duffy's job appraisals indicate weakness in the areas of supervisory, managerial, and organizational skills. For example, Duffy was counseled on several occasions to improve her supervisory skills. In her 1994 appraisal, her supervisor wrote: "It is felt that Bernie at times is part of the problem not the solution. Bernie must become a supervisor and separate herself from friends and the company grapevine." Duffy's 1995 performance evaluation included similar comments concerning her supervisory and management skills:"No problems with quality of work--only question is quality of supervision part of job." The 1995 report concludes: "Bernie, as an individual worker, is high average or above, but when considering performance as m[anager] of dep[artment], the rating is low average, at best, and below average at times when she is upset or in disagreement with m[anagement]." In 1996, her overall performance was rated average, but she was again rated "low average, at best" for her supervisory skills. Without proof of her qualification to perform the supervisory duties of the management promotion, the fact that Duffy may reasonably have found it intolerable that she was "passed over" for her age is not enough to raise an inference of age discrimination.

Finally, we note that Duffy's own explanation as to why she left Paper Magic supports our conclusion that she was not constructively discharged. When pressed to explain why she elected to resign, Duffy responded that her decision

was based, in part, on her son's recent graduation from college and her resultant financial ability to leave. She stated:

> Well, I thought about it, and I just couldn't take it no more. I wasn't getting cooperation from anybody. In my opinion, I was just being forced out. Plus, I had my son in college and he was on his own, so in that situation I could, you know, I could afford to leave. Other years I couldn't afford to leave and stuff.

App. at 323. This admission undermines Duffy's claim that she was constructively discharged.

III.

In sum, we hold that Duffy did not produce evidence from which a reasonable jury could find an adverse employment action, which is a prerequisite to a successful age discrimination claim. Therefore, we will affirm the District Court's summary judgment.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

12