

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-2004

# Harrison v. Housing Auth Pgh

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4531

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Harrison v. Housing Auth Pgh" (2004). *2004 Decisions.* Paper 299.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/299

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 03-4531

GEORGE HARRISON, III,

Appellant

v.

HOUSING AUTHORITY OF THE CITY OF
PITTSBURGH

On appeal from the United States District Court
for the Western District of Pennsylvania
(Case No. 01-cv-00748)
District Judge: Hon. Donetta W. Ambrose

Submitted Pursuant to Third Circuit LAR 34.1
September 30, 2004

Before: RENDELL, FUENTES and SMITH, *Circuit Judges*

(Filed: September 30, 2004)

OPINION OF THE COURT

SMITH, *Circuit Judge*.

George Harrison appeals from the District Court's grant of summary judgment in

his racial discrimination claim in favor of the Housing Authority of the City of Pittsburgh

("Housing Authority"). For the reasons set forth below, we affirm.

I.

Because we write only for the parties, we set forth just a brief recitation of the facts. Harrison began his career with the Housing Authority in 1978 as a van driver, receiving promotions to positions such as janitor and laborer until he was promoted to Field Maintenance Supervisor in September 1996.

In the fall of 1997, Harrison authorized the use of a building coating meant to protect against graffiti which was more expensive than the coating normally used by the Housing Authority. On October 20, 1997, Harrison was suspended for five days for "Failure to obtain authorization to change Contractor's scope of work resulting in substantial cost to [the Housing Authority], and Failure to perform job duties." An Employee Contact Report memorializing this incident was filed by his supervisor on October 27, 1997. After a grievance hearing, Guy Pollice, the Housing Authority's Director of Maintenance, reduced Harrison's suspension to three days.

On September 15, 1998, Harrison filed an Employee Contact Report about his subordinate, David Battles, citing Battles' failure to clean the area assigned to him. Harrison knew, however, that Battles had not been at work for a substantial portion of the previous weeks due to vacation, holiday, suspension and sick leave. Harrison's "unfair treatment" of Battles prompted Harrison's supervisor to file another Employee Contact report on October 20, 1998. Initially, Harrison was suspended for five days for his treatment of Battles. After a grievance hearing, the suspension was reduced to a letter placed in Harrison's file which indicated that it was placed there "as a warning letter and

2

as evidence of [his] difficulty in properly performing the responsibilities of a supervisor."

Harrison began an extended period of sick leave coincident with these events. On February 26, 1999, while on sick leave, Harrison filed a charge of racial discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC").

In a General Intake Questionnaire completed on March 1, 1999, Harrison stated that he "had been verbally informed that [he was] to be demoted." Thereafter, on March 15, 1999, Harrison informed Darlene Lindner in the Housing Authority's personnel office that he had filed the racial discrimination charges. A week later, on March 22, Harrison returned to work after his prolonged sick leave.

In January 2000, Linder informed Harrison that a layoff was impending and that because his demotion had resulted in a loss of seniority he should look for other work. Rather than wait for the layoff, Harrison resigned from his position at the Housing Authority effective March 10, 2000.

Harrison filed a complaint in the District Court on April 27, 2001, alleging discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1) and the Pennsylvania Human Rights Act ("PHRA"), 43 Pa. Cons. Stat. § 955 *et seq.* The District Court construed Harrison's claims as alleging racial discrimination, hostile work environment, constructive discharge and retaliation. The District Court granted the Housing Authority's motion for summary

judgment on October 24, 2003.

## II.

On appeal, Harrison argues that, although the District Court appropriately examined his claims of racial discrimination under the burden shifting analysis of *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973), it failed to consider all of the evidence in his favor with respect to his burden to establish that the Housing Authority's legitimate nondiscriminatory reasons for demoting him were pretextual. We agree with the District Court that Harrison failed to "1) cast[] sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allow[] the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action," as required to show that the proffered non-discriminatory reason offered by the Housing Authority was simply pretext. *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994). At best, the evidence proffered by Harrison demonstrates that the Housing Authority's decision was a mistake. As we explained in *Keller v. Orix Credit Alliance*, "[t]he question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." 130 F.3d 1101, 1109 (3d Cir. 1997) (brackets omitted) (citing *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)). We agree with the District Court that Harrison failed to make a sufficient showing.

4

We also agree with the District Court that Harrison failed to meet his burden to show that he was subjected to a hostile work environment. The incidents identified by Harrison are the sort of non-serious isolated incidents that the Supreme Court has cautioned do not amount to "discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotations omitted).

In the same way, nothing Harrison alleged could be considered the "intolerable conditions" necessary to show constructive discharge. *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 169 (3d Cir. 2001); *see also Konstantopolos v. Westvaco Corp.,* 112 F.3d 710, 718 (3d Cir. 1997) (where a hostile work environment was not shown plaintiff failed to show a necessary predicate for a constructive discharge claim).

Finally, Harrison challenges the District Court's determination that his retaliation claim failed because he did not establish the requisite temporal nexus between filing a discrimination charge and his demotion. Specifically, Harrison claims that the decision about his demotion was not final until April 20, 1999, when he sent a letter to Linder regarding the reduction in his pay which confirmed that he had been demoted. On March 1, 1999, however, Harrison filled out an EEOC General Intake Questionnaire in which he stated: "I have been verbally informed that I am to be demoted . . . ." The statement reflects no lack of finality, but instead states that he had already been informed that the demotion would occur. In his deposition, Harrison explained that he did not inform

5

Linder of his discrimination charge until March 15, 1999, more than two weeks after he knew of the demotion. We agree with the District Court that he has failed to establish a connection between his protected activity and the employer's adverse action.

Accordingly, we will affirm the District Court.