

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-27-2008

# Stremple v. Sec Dept Veterans

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3807

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Stremple v. Sec Dept Veterans" (2008). *2008 Decisions.* Paper 621.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/621

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-3807

_____

JOHN F. STREMPLE

v.

R. JAMES NICHOLSON,
SECRETARY OF THE DEPARTMENT OF VETERANS AFFAIRS,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 01-cv-00890)
Magistrate Judge: Honorable Francis X. Caiazza

_____

Submitted Under Third Circuit LAR 34.1(a)
on October 31, 2007

Before:  RENDELL and NYGAARD, <u>Circuit Judges</u>,
and McCLURE, <u>District Judge</u>.

(Filed August 27, 2008)

_____

OPINION OF THE COURT

_____

_____
   *   Hon. James F. McClure, Jr., Judge of the United States District Court for the
       Middle District of Pennsylvania, sitting by designation.

RENDELL, Circuit Judge.

The Secretary of the Department of Veterans Affairs (the "Secretary") appeals an adverse determination by the Magistrate Judge after a bench trial on John F. Stremple's civil action for age discrimination, hostile work environment, and retaliation resulting in constructive discharge.

An army veteran, Dr. Stremple served as Chief of Surgery at the Veterans Affairs Health Care System ("V.A.") in Pittsburgh, Pennsylvania for 21 years. He also held a concurrent position as Professor of Surgery at the University of Pittsburgh School of Medicine. Dr. Stremple ran the surgical services at the Pittsburgh V.A. until he was supplanted in 1997 when the V.A. restructured itself and created a "surgical specialty care service line." Although Dr. Stremple applied for the position of Product Line Manager for Surgical Specialty Care Services, he was passed over in favor of Nurse Carolyn Bechtold, who had no surgical experience but, in the selection committee's view, had stronger administrative skills. Shortly thereafter, Dr. Stremple contacted an Equal Employment Opportunity Commission ("EEOC") counselor, but was dissuaded from filing a formal complaint by the Medical Center Director Thomas Cappello. Subsequently, at various meetings in February 1998, Dr. Marshall Webster urged Dr. Stremple to retire and told him Cappello was behind the offer. From the time the informal EEOC complaint was made, Dr. Stremple received poor evaluations after years of only "outstanding" and "highly satisfactory" evaluations. Supervisors, including

2

Nurse Bechtold, Anita Steinmiller, and Assistant Chief of Staff David Eibling, routinely made ageist comments.

On March 5, 1998, Dr. Stremple's immediate supervisor Dr. Ernest Urban transferred him full time from University Drive, where he was Chief of Surgery, to a different and remote facility, Aspinwall. This transfer was considered a demotion (or even a firing) by other doctors and significantly impaired Dr. Stremple's ability to function as Chief of Surgery. Immediately following his transfer to Aspinwall, he filed a formal EEOC complaint. His office at University Drive was then moved several floors away from the operating rooms and efforts were made to exclude him from the operating floor. Thereafter, Dr. Webster called two additional meetings to encourage him to retire at which Dr. Stremple was told that Cappello wanted him out and he should stop the EEOC suit.

On July 27, 1999, after he had agreed to a buyout from the University of Pittsburgh Medical School, Dr. Stremple resigned from his position at the V.A. Under the terms of his agreement with the University, he could not apply to any university or V.A. hospitals. Consequently, he applied for Chief of Surgery positions at the two remaining major hospitals in the Pittsburgh area. He did not receive these jobs and allowed his medical license to lapse in 2000.

In May 2001, Dr. Stremple filed suit under Title VII, the Age Discrimination in Employment Act ("ADEA"), the Fair Labor Standards Act, and Pennsylvania common

3

law, alleging that the V.A. had created a hostile work environment and engaged in age discrimination and retaliation resulting in constructive discharge. The Magistrate Judge heard extensive testimony over the course of a nine-day bench trial. Ultimately, the Judge rejected Dr. Stremple's hostile work environment claim, but found that he had established age discrimination and retaliation resulting in constructive discharge by a preponderance of the evidence. He, therefore, issued judgment in favor of Dr. Stremple on those claims and awarded backpay in the amount of $1,020,031.25, equivalent to his salary as Chief of Surgery for 6.25 years, the time remaining until his planned retirement.

The Secretary now appeals, raising three issues. First, it contends that the federal sector provision of the ADEA, which provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age," 29 U.S.C. § 633a(a), does not provide a cause of action for retaliation claims against the government or waive sovereign immunity for such claims. Second, it questions whether Stremple met the legal standard for establishing constructive discharge. Third, it contends that because Stremple allowed his medical license to lapse a year after his discharge, he is not entitled to damages for the entire 6.25-year period. We have jurisdiction to decide the issues on appeal pursuant to 28 U.S.C. § 1291.

4

## I.

We have little difficulty in disposing of the first issue, since that claim, although an issue of first impression when first briefed in connection with this appeal, has since been settled by virtue of the Supreme Court's opinion in *Gomez-Perez v. Potter,* 128 S. Ct. 1931 (2008). There, the Court held that a retaliation claim does lie under section 633a of the ADEA, and, specifically, that section 633a(c) "unequivocally waives sovereign immunity for a claim brought by 'any person aggrieved'" by a section 633a violation. *Id.* at 1943. Accordingly, we will not disturb the Magistrate Judge's ruling on this issue.

## II.

The Secretary also contests the Magistrate Judge's ruling that Stremple met the standard of proof required for a constructive discharge claim. Because the Secretary challenges the court's application of law to the facts as found, our review is plenary. *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 170 (3d Cir. 1991).

The Secretary claims that Stremple failed to make the showing required by the Supreme Court's opinion in *Penn. State Police v. Suders,* 542 U.S. 129 (2004), in which the Court held that, in order to succeed on a compound claim of constructive discharge due to hostile work environment, a claimant must make an additional showing beyond that required for a hostile work environment claim alone. The Secretary's argument appears to overlook the fact that, in *Suders*, the Court did not set forth a rule for all constructive discharge claims, but rather dealt only with the issue of an employer's

5

liability for constructive discharge resulting from a hostile work environment attributable to a supervisor. *Id*. at 143.

Here, the judgment in favor of Dr. Stremple was not based on a compound claim of constructive discharge brought about by a hostile work environment. Although Dr. Stremple asserted a hostile work environment claim, the Magistrate Judge rejected it. Instead, the Judge found that "Dr. Stremple was the subject of age discrimination and retaliation and . . . said conduct was a substantially motivating and/or determinative factor regarding events leading to his constructive discharge." App. 53. Thus, the burden for a claim of constructive discharge, not the showing required for the compound claim at issue in *Suders*, applies.

The Magistrate Judge, accordingly, identified the appropriate standard for constructive discharge, finding that "the[] events were sufficiently intolerable that a reasonable person would have felt compelled to resign." App. 59; *see also Duffy v. Paper Magic Group, Inc.,* 265 F.3d 163, 167 (3d Cir. 2001) (summarizing standard as "the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign"). In applying the standard, the Judge found that Dr. Stremple suffered "a slow degradation of his responsibilities, status, and authority," App. 60, and concluded that he "ha[d] presented a textbook case of constructive discharge," App. 67.

6

A review of the record makes clear that Magistrate Judge properly applied the standard to the facts. Constructive discharge is a heavily fact-driven determination. *Levendos v. Stern Entm't, Inc.*, 860 F.2d 1227, 1230 (3d Cir. 1988). Accepting the facts as found by the Magistrate Judge, which the Secretary does not contest, there is ample evidence that Stremple was forced out of his position, his work was made intolerable, and his supervisors acted with retaliatory animus toward him, leading to a constructive discharge. Virtually all of the factors that should be considered in a constructive discharge case, known as the *Clowes* factors,[1] were present in Dr. Stremple's case. *Clowes v. Allegheny Valley Hosp.,* 991 F.2d 1159 (3d Cir. 1993), *cert. denied,* 510 U.S. 964 (1993). In his 22-page opinion reviewing the facts presented during the 9-day trial, the Magistrate Judge determined that the V.A. engaged in an ageist and retaliatory course of action which eviscerated Dr. Stremple professionally and personally. The Judge considered all of the evidence and rejected the testimony of Dr. Cappello. He found that Dr. Cappello acted with retaliatory animus against Dr. Stremple and wanted to be rid of him. One of the supervisors who testified, Dr. Webster, even acknowledged that Dr. Cappello wanted Dr. Stremple "out." The Magistrate Judge also found that Dr. Urban, Dr. Stremple's supervisor, acted with retaliatory animus, that his

---

[1]These are: "(1) a threat of discharge; (2) suggestions or encouragement of resignation; (3) a demotion or reduction of pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; (6) unsatisfactory job evaluations." *Suders v. Easton*, 325 F.3d 432, 445 (3d Cir. 2003), vacated on other grounds, *Penn. State Police v. Suders*, 542 U.S. 129 (2004) (summarizing *Clowes v. Allegheny Valley Hosp.*).

documentation was "suspect," and that he was involved in a conspiracy to force Dr. Stremple to resign. App. 58. The Magistrate Judge noted the ageist comments and complicity of other doctors and nurses. The Judge recognized that the conduct of Stremple's superiors showing efforts to force his resignation, taken together with the other evidence of ageist statements, transfer, relocation of his office, etc., provided sufficient evidence to establish constructive discharge. Given the Judge's credibility findings and assessment of the evidence, his constructive discharge ruling should not be disturbed.

### III.

The Secretary also challenges the award of 6.25 years' backpay. It faults Dr. Stremple for applying for only two positions during the 6.25-year period at issue and allowing his medical license to lapse. It argues that, so doing, he failed to mitigate damages and that, even if he did mitigate damages, backpay should have been awarded only until the date Stremple allowed his medical license to lapse. We review the question of whether a claimant has met his or her duty to mitigate damages for clear error, *Booker v. Taylor Milk Co.*, 64 F.3d 860, 864 (3d Cir. 1995), and review the calculation of backpay for abuse of discretion, *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 156 (3d Cir. 1999). Under either standard, we believe that the Magistrate Judge's ruling should not be disturbed.

As the Secretary acknowledges, in order to prove a failure to mitigate, an employer must demonstrate that substantially equivalent work was available, and that the claimant did not exercise reasonable diligence to obtain such employment. *Le v. Univ. of Penn.*, 321 F.3d 403, 407 (3d Cir. 2003). Here, the Magistrate Judge found that Dr. Stremple had made reasonable attempts to mitigate in light of "(a) the highly specialized and unique nature of the plaintiff's former position, (b) his unsuccessful applications for chief of surgery positions at the two major non-university-affiliated hospitals in the Pittsburgh area, and (c) his credible testimony regarding the prohibitive costs of malpractice insurance given his financial position." App. 67. The Judge, therefore, awarded damages up to Dr. Stremple's intended retirement date.

While the Secretary urges that this was error, we disagree. We believe there was adequate basis for the Magistrate Judge's determination that Dr. Stremple made sufficient efforts to find other employment and, in light of his inability to do so, ceasing to maintain his license was a financial necessity, and not a disqualifying factor with respect to the damage award.

Accordingly, we will AFFIRM the Order of the District Court.