J-A29019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TIMOTHY M. RIEMER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| II-VI, INCORPORATED | : | No. 338 WDA 2023 |

Appeal from the Order Entered March 6, 2023
In the Court of Common Pleas of Butler County Civil Division at No(s):
2020-10768

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: February 23, 2024**

Timothy Riemer appeals from the order granting summary judgment in favor of his former employer, II-VI, Inc. (the Company),[1] in his age discrimination case under the Pennsylvania Human Relations Act (PHRA).  ***See*** 43 P.S. §§ 951–963.  We affirm.

Riemer, who was born in 1960, worked for the Company since 1983. He rose in rank, and in 2015, he became the Company's director of global sales operations.  While he was in this role, Riemer had seven or eight employees reporting to him.

In 2016, the Company prepared to standardize its computerized sales program (SAP) worldwide.  The Company assigned Riemer to oversee the rollout of SAP in Europe.  During this project, Riemer became acquainted with

---

[1] II-VI, Inc. is now Coherent Corp.  For clarity, we refer to it as "the Company."

M.K., a female employee in the IT department.[2]  In 2017, Riemer and M.K. interacted almost daily.

On October 13, 2017, M.K. was in Germany for the SAP project.  She sent a group e-mail message to 24 employees the Company, including Riemer, about the status of the project.  Riemer replied to M.K. only, beginning a string of messages in which he asked about increasingly personal matters until M.K. stopped replying.  The messages, verbatim, were as follows:

> Riemer: WOW, Friday night bin Germany and you're still working???? What is wrong with you??? What is it, almost 3:00 in the morning????
>
> M.K.: You owe me BIG time
>
> Poor Toby stayed in the office with us too
>
> Riemer: BTW, who is us? I thought it was only you and Tobi?? Poor boy, he's just puddy in your hands!!!

---

[2] The parties dispute the extent of Riemer's supervisory authority over M.K. in the SAP project.  The Company asserts without accurate citation that M.K. "reported to Riemer in connection with this project."  The Company's Brief at 9.  Riemer emphasizes that he and M.K. worked in different departments. Riemer's Brief at 12–13.

In his deposition, Riemer named seven employees who reported to him. N.T., Riemer Depo., 6/28/22, at 58–59.  He did not list M.K., and he did not admit any authority over her.  *See id.* at 56–59.  However, Riemer stated that his role in the SAP project was to oversee its completion, and he acknowledged that M.K. was a member of the team working on the project through to completion. *Id.*  Further, it is undisputed that M.K. included Riemer among the 24 employees she e-mailed about the SAP project.

Viewing the evidence in a light most favorable to Riemer as the party who opposed summary judgment, we accept for purposes of this analysis that Riemer did not have direct supervisory authority over M.K.  However, we infer from Riemer's role in the SAP project that he had some degree of oversight over all employees working on the project, including M.K.

M.K.: Ed me and Toby

Riemer: So I guess the offs are in your favor....

M.K.: I am gonna my to bed

Riemer: Why now, I'm just getting started?? If I'm over there I can assure you that I'm not working this late. At least not business!!!

M.K.: It's not a choice

I am part of a grossly mis managed project with inadequate staffing

Riemer: Then it's a good thing I'm not there!

Riemer: Hello?????

M.K.: Are YOU drunk

Riemer: I'm working on it, are you???

M.K.: Nope

Riemer: Then the logical question is why not? I thought you would be more fun outside the office, but I guess you're all business...

M.K.: I am, but getting yelled at daily for deficiencies I highlighted and were directly ignored is not fun

Riemer: Come on I thought you were tougher than that. We can't travel together. I'll be a bad influence

M.K.: I don't normally care but too many people I like will be impacted

Ed literally said to me today, I don't thing I have ever seen you this dedicated :)

Riemer: Wow you're making me feel special!

M.K.: I'll send Patti to see you if you're not nice

Riemer: I'm m trying to be nice

Riemer: BTW, I can be VERY nice!!!!

M.K.: Ok, good to know

I am going to sleep now finally !

Riemer: No, you can't I'm not done...

M.K.: Can too

Riemer: No, I need to talk to someone...

M.K.: I have been up way too long ....

I am going to sleep !!!

Riemer: But I need you...

M.K.: No you don't

You're just bored

Riemer: No, i need some spice!

M.K.: Night!!! Zzzzzzzzzz

Riemer: What time do you want me to wake you up? Also, do you prefer a certain way or touch???

*See* Riemer's Complaint, 10/23/20, Exhibit 1.

After the project, M.K. interacted less with Riemer; she eventually transferred to a different facility and did not see Riemer at all. On December 12, 2017, Riemer used another employee's device to send an e-mail message to M.K. with the subject "Message from Tim ;-)" that read: "From Tim: Wow, im feeling the love. Youve been giving me the cold shoulder ever since we went live. Whats up with that?????" M.K. responded with a question mark. Riemer did not reply.

In May of 2018, M.K., through counsel, informed The Company about unwelcome advances from Riemer. The Company investigated the matter. It terminated Riemer's employment on August 20, 2018, when Riemer was 58 years old. Later that day, the Company told Riemer that the reason for the

termination was a "rule infraction," specifically "a Class I – Violation of the company's harassment policy" that occurred on "various dates in 2017 & 2018." Opposition to Summary Judgment, Appendix, 2/9/23, Exh. 9, at 1.[3]

The Company divided Riemer's duties among four other employees, three of whom Riemer had supervised. A fifth employee became these employees' supervisor. All five employees were younger than Riemer.

On October 3, 2020, Riemer filed a complaint against the Company including one count of age discrimination under PHRA, as well as other counts not at issue. The case proceeded with discovery, which revealed two other Company employees potentially relevant to Riemer's allegation of age discrimination: E.M. and C.P.

E.M., who was born in 1978, works in the Company's sales department, in the same facility where Riemer worked. In 2013, the Company issued E.M. a warning after finding that E.M. had inappropriate, vulgar conversations with coworkers in person and through text messages. In 2019, the Company again issued a warning to E.M. after finding that E.M. made "unprofessional comments and discussed topics that are not appropriate in the workplace." The Company did not terminate E.M.'s employment.

---

[3] The Company initially provided no reason for its action. Riemer e-mailed the Company later because he needed to provide a reason for his termination to apply for unemployment. Choosing from the available options, Riemer said: "I overlooked Rule Violation which I guess is the most appropriate." Opposition to Summary Judgment, 2/9/23, Appendix, Exh. 9, at 3. This option required Riemer to provide a specific rule and a date of the incident. *Id.*

C.P., who Riemer described as "significantly younger" than himself, was one of M.K.'s subordinates. Like Riemer, C.P. was named in M.K.'s May 2018 letter as a perpetrator of "hostility and unprofessional pushback" against her. M.K. asserted that C.P. refused to complete assignments, excluded M.K. from meetings, threatened her, and lunged at her. The letter also indicated that C.P. had later resigned after a different incident.

Following discovery, the Company moved for summary judgment. The parties filed briefs, and the trial court heard oral argument on February 16, 2023. On March 3, 2023, the trial court entered a memorandum opinion and order granting the Company's motion for summary judgment.

Riemer timely appealed. Riemer and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Riemer asks this Court to review two issues:

I. Whether the [trial court] erred when it determined that Riemer could not establish the fourth element of his prima facie case of age discrimination through proof that his duties were assumed by substantially younger individuals.

II. Whether the [trial court] erred when it held that Riemer could not establish that [the Company's] proffered reason for Riemer's termination was pretextual based on the [trial court's] determination that the comparators identified by Riemer were not similarly situated[.]

Riemer's Brief at 9.

Riemer's issues concern the trial court's grant of summary judgment in favor of the Company. The following principles guide our review:

A motion for summary judgment will only be granted if there is no genuine issue concerning any material fact, and the moving

- 6 -

party is entitled to judgment as a matter of law. An appellate court may reverse an order granting summary judgment where there is an error of law or an abuse of discretion. Because the question of whether a genuine issue of material fact exists is one of law, appellate review is *de novo*. In undertaking such review, the record is viewed in the light most favorable to the non-moving party (here, [Riemer]), and all doubts as to whether a genuine issue exists are resolved against the moving party.

*Chiles v. Miller*, 288 A.3d 913, 916 (Pa. Super. 2023) (quoting *Karoly v. Mancuso*, 65 A.3d 301, 308–09 (Pa. 2013) (internal citations omitted)).

Under the PHRA, an employer may not discharge an individual from employment because of the individual's age. 43 P.S. § 955. When there is no direct evidence of such discrimination (*e.g.*, an employer admitting that it fired an employee because of the employee's age), a plaintiff may prove discriminatory treatment with indirect evidence. *Kroptavich v. Pa. Power & Light Co.*, 795 A.2d 1048, 1055 (Pa. Super. 2002).

The Supreme Court of the United States has announced a three-step burden-shifting framework to prove employment discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Pennsylvania has adopted the same framework for indirect evidence of age discrimination under the PHRA. *Kroptavich*, 795 A.2d at 1055.

The first step in the burden-shifting framework is for the plaintiff to establish a *prima facie* case of discrimination. *Id.* at 1055. In the context of age discrimination, that includes four elements: (i) the plaintiff was at least 40 years of age, (ii) the plaintiff was qualified for the position, (iii) the plaintiff

was dismissed despite being qualified, and (iv) the circumstances of the dismissal give rise to an inference of discrimination. *Id.* at 1056.

Evidence supporting "an inference of discrimination," the fourth element of a plaintiff's *prima facie* case, may include "the fact that the plaintiff was replaced by someone substantially younger." ***Id.***; ***accord Duffy v. Paper Magic Grp., Inc.***, 265 F.3d 163, 167 (3d Cir. 2001) (describing the fourth element of a *prima facie* case under analogous federal law, that the plaintiff "was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination"). Even if the employer replaced the plaintiff with other members of the protected class, a plaintiff can simply show that he "suffered dismissal despite [the employer's] need for someone to perform the same work after he left." ***Kroptavich***, 795 A.2d at 1058.

After the plaintiff has set out a *prima facie* case, the second step in the burden-shifting framework, is for the defendant to articulate a valid reason for dismissing the plaintiff. ***Id.*** at 1055. An employer can meet its "relatively light burden" at this step by asserting, for example, that it discharged the plaintiff for violating an anti-harassment policy. ***See In re Tribune Media Co.***, 902 F.3d 384, 402 (3d Cir. 2018). At this point, "[t]he employer's burden . . . is one of production, not persuasion, and thus involves no credibility assessment. If the employer articulates a legitimate business explanation, then the presumption of discriminatory intent created by the employee's *prima facie* case is rebutted and the presumption simply drops out of the picture." ***Kroptavich***, 795 A.2d at 1055 (quotations omitted).

Once the employer has stated a nondiscriminatory reason for dismissing the plaintiff, the final step in the burden-shifting framework is for the plaintiff "to show that the legitimate reasons proffered by the employer were pretexts for what, in reality, was a discriminatory motivation." *Id.* The plaintiff must meet his burden with "some evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 1059; ***accord Fuentes v. Perskie***, 32 F.3d 759, 764 (3d Cir. 1994).

Under the PHRA, a plaintiff may prove pretext with evidence that "the defendant has treated similarly situated, younger individuals more fairly." ***Liebensperger v. Carpenter Techs., Inc.***, 152 A.3d 1066, 1077 (Pa. Cmwlth. 2016).[4] To determine if other individuals (called comparators) were "similarly situated," courts consider whether they held similar positions, *i.e.*, duties, responsibilities, and supervisors. The Commonwealth Court observed:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances."

---

[4] Because the Supreme Court of Pennsylvania has not spoken directly on this issue, we rely on this decision from the Commonwealth Court as persuasive authority.

*Id.* at 1075 (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009)).

Courts also consider the timeframe of the employer's actions, *i.e.*, whether they were close in time or too remote, as well as the type of conduct that the employer acted upon:

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Id.* After considering the undisputed evidence regarding the alleged comparators, summary judgment is appropriate if there is no evidence from which a factfinder could conclude that the other individuals are similarly situated to the plaintiff. *Id.*

Here, the trial court concluded that Riemer could not meet his burden at two steps of the burden-shifting framework. First, the court reasoned that Riemer failed to produce evidence of the last element of his *prima facie* case— that the circumstances gave rise to an inference of discrimination. Second, the court determined that Riemer could not show that the Company's given reason for terminating him (a violation of its harassment policy) was a mere

- 10 -

pretext for age-based discrimination. Both conclusions turned on the trial court's analysis that Riemer had not shown that the younger employees whom the Company did not fire—E.M. and C.P.—were similarly situated to Riemer.

On appeal, Riemer challenges both reasons the trial court gave for granting summary judgment. He argues that the trial court misapplied the law by requiring proof of similarly situated employees at the *prima facie* stage. Additionally, Riemer submits that E.M. and C.P. were similarly situated to him. Therefore, Reimer contends that a jury could find that the Company terminated him because of his age, and the trial court should have denied summary judgment.

We will focus our analysis on whether Riemer showed that the Company treated him differently than similarly situated employees, which is dispositive. In doing so, we assume without deciding that Riemer met his minimal burden to establish a *prima facie* case of age discrimination.[5]

_____

[5] We note that the trial court, in describing a plaintiff's *prima facie* burden, relied on our sister court's description of the final element, which it read to require multiple factors to give rise to an inference of discrimination:

> A complainant establishes that the circumstances give rise to an inference of discrimination by demonstrating, *inter alia*, that the complainant was discharged and replaced by someone outside of his protected class, **Kroptavich**, 795 A.2d at 1056, **and** "that similarly situated employees were not treated equally." [**Tex. Dep't of Cmty. Affairs v. Burdine**, 450 U.S. 248, 253 (1981).] Whether the circumstances raise an inference of discrimination is not a rigid test and must be tailored to differing factual circumstances. **McDonnell Douglas**, 411 U.S. at 802 n.13.

*(Footnote Continued Next Page)*

- 11 -

Regarding the first employee, the trial court acknowledged that E.M. violated the Company's harassment policy both in 2013 and 2019. However, it found that E.M. was not similarly situated because he "never held a supervisory role with the company, nor did he have the same supervisor or have his employment status decided by the same individual" as Riemer. Trial Court Opinion, 5/6/23, at 3. Riemer counters that the Company's decision not to terminate E.M. was not based on any of these aspects; moreover, Riemer had no direct authority over M.K.

We conclude that the trial court properly found that E.M. was not similarly situated to Riemer. Unlike Riemer, E.M. never had a supervisory role within the Company. Although the harassment policy applied to all employees, this does not render Riemer's supervisory status meaningless for the purposes of determining whether E.M. was similarly situated. Rather, it means that the circumstances of E.M.'s employment were not "nearly identical" to those of Riemer's. *Liebensperger*, 52 A.3d at 1075. Therefore, Riemer's comparison to E.M. is not sufficient to create a question of fact to overcome summary judgment in favor of the Company.

Likewise, the second employee, C.P., was not similarly situated to Riemer. Like E.M., C.P. was not a supervisor; instead, he was a subordinate

_____

*Leibensperger v. Carpenter Techs., Inc.*, 152 A.3d 1066, 1073 (Pa. Cmwlth. 2016) (emphasis added). However, as described *supra*, we have explained that it is enough for a plaintiff to show that the employer continued to need someone to do the plaintiff's work. *Kroptavich*, 795 A.2d at 1058. Here, it is undisputed that other employees of the Company continued to perform Riemer's duties after Riemer was discharged.

of M.K. Furthermore, although both C.P. and Riemer were named in M.K.'s letter as perpetrators of harassment against her, the Company could not discharge C.P. because C.P. had already resigned based on an unrelated incident. Based on the undisputed facts, no reasonable jury could conclude that C.P. was similarly situated to Riemer. Therefore, the trial court did not err in granting the Company's motion for summary judgment. *Id.*

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/23/2024